TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | No. 85-107 |
| of | : | <u>JULY 3, 1986</u> |
| JOHN K. VAN DE KAMP<br>Attorney General | : | |
| JACK R. WINKLER<br>Deputy Attorney General | : | |

_____

THE HONORABLE PATRICK JOHNSTON, MEMBER OF THE CALIFORNIA ASSEMBLY, requests an opinion on the following questions:

1.    What duties may be assigned to a level III reserve peace officer?

2.    What degree of supervision is required over a level III reserve peace officer?

3.    May a level I reserve peace officer supervise a level III reserve peace officer?

1

CONCLUSIONS

1.    A level III reserve peace officer may:

(a)   Be assigned to perform search and rescue, personnel administration support, community public information services, communications technician services and scientific services without supervision; and

(b)   Be given other limited duty assignments which do not require use of general law enforcement powers in their routine performance and which may only be performed under the direct supervision of a peace officer possessing a regular POST basic certificate.  General law enforcement powers include the investigation of crime including the interrogation of suspects and witnesses and search for physical evidence; peace officer arrests, searches and seizures; and the taking and maintaining of custody of persons arrested for or convicted of crime.

2.    The degree of supervision required over a level III reserve peace officer is that required to provide reasonable assurance that the limited duty assigned will be successfully performed without harm to the reserve or others.

3.    A level I reserve peace officer may supervise a level III reserve peace officer only if he or she possesses a regular basic certificate issued by the Commission on Peace Officer Standards and Training.

ANALYSIS

Penal Code section 830.6(a)(1) provides for the appointment of reserve peace officers as follows:

"Whenever any qualified person is deputized or appointed by the proper authority as a reserve or auxiliary sheriff or city policeman, a deputy sheriff, a reserve peace officer of a regional park district, or a deputy of the Department of Fish and Game, and is assigned specific police functions by such authority, such person is a peace officer; provided, such person qualifies as set forth in Section 832.6, and provided further, that the authority of such person as a peace officer shall extend only for the duration of such specific assignment."

Since all three questions concern "level III" reserve peace officers, this analysis will focus on that category.  The "level" of a reserve peace officer refers to the

2

subdivision of section 832.6(a)[1] in which the three categories are described. Thus, a level I reserve peace officer is described in subdivision (1), a level II reserve peace officer in subdivision (2) and a level III in subdivision (3) of section 832.6(a).

The first question submitted concerns the duties which may be assigned a level III reserve peace officer. The assignments which may be given reserve peace officers are governed by section 832.6(a) which reads:

"(a) On or after January 1, 1981, every person deputized or appointed as described in subdivision (a) of Section 830.6 shall have the powers of a peace officer only when such person is:

"(1) Deputized or appointed pursuant to paragraph (1) of subdivision (a) of Section 830.6 and is assigned to the prevention and detection of crime and the general enforcement of the laws of this state, whether or not working alone, and the person has completed the basic training prescribed by the Commission on Peace Officer Standards and Training.

". . . . . . . . . . . . . . . . . . . . . ."

"(2) Assigned to the prevention and detection of crime and the general enforcement of the laws of this state while under the immediate supervision of a peace officer possessing a basic certificate issued by the Commission on Peace Officer Standards and Training, the person is engaged in a field training program approved by the Commission on Peace Officer Standards and Training, and the person has completed the course required by Section 832 and such other training prescribed by the commission; or

"(3) Deployed and authorized only to carry out limited duties not requiring general law enforcement powers in their routine performance. Those persons shall be permitted to perform these duties only under the direct supervision of a peace officer possessing a basic certificate issued by the commission, and shall have completed the training required under Section 832 and any other training prescribed by the commission for those persons. Notwithstanding the provisions of this paragraph, a level III reserve officer may perform search and rescue, personnel administration support, community public information services, communications

---

[1] Section references are to the Penal Code unless otherwise indicated.

technician services, and scientific services, which do not involve direct law enforcement without supervision." (As amended by ch. 761, Stats. 1984.)

No judicial decisions have been found construing section 832.6. We must therefore interpret the section according to the applicable rules of statutory construction. The principle rules were summarized in *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230, as follows:

"We begin with the fundamental rule that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent the court turns first to the words themselves for the answer. We are required to give effect to statutes according to the usual, ordinary import of the language employed in framing them. If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose; a construction making some words surplusage is to be avoided. When used in a statute words must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear. Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." (Citations and quotations omitted.)

The courts consider the legislative history of the statute as well as the circumstances of its enactment in determining the intent of the Legislature. (*People* v. *Black* (1982) 32 Cal.3d 1, 5.)

As originally enacted in chapter 987, Statutes of 1977, subdivision (3) of section 832.6(a) provided: "Deployed only in such limited functions as would not usually require general law enforcement powers and . . . [the training requirements]." The words "general law enforcement powers" have not been defined in the statute nor by the Commission on Peace Officer Standards and Training (POST). Nevertheless, we believe that in the context of section 832.6(a), they were intended to refer to those powers which would normally be exercised by level I and level II reserve peace officers assigned to "the prevention and detection of crime and the general enforcement of the laws of this state" as this phrase is used in subdivisions (1) and (2). The latter phrase was interpreted by POST in 1978 in the course of establishing the training requirements for the three levels of reserves. The phrase was said to refer

"to a Level I or Level II reserve officer assigned to:

- investigate crime, or

4

- patrol a geographic area and

- handle personally the full range of citizen requests for police services and

- take enforcement action on the full range of law violations for which the reserve's department has law enforcement responsibilities." (POST Bulletin 78-13 dated August 9, 1978, announcing the adoption of reserve officer training requirements.)

The substance of this definition was incorporated in section H-1 (revised July 15, 1982) of the POST Administrative Manual[2] as follows:

"2. *Definitions*. For purposes of clarifying Penal Code Section 832.6, and establishing uniformity in implementing and conducting the POST Reserve Officer Program, the following definitions apply:

". . . . . . . . . . . . . . . . . . . . . ."

"h. 'Prevention and detection of crime and the general enforcement of laws "refers to the peace officer authority of a Level I or Level II reserve officer assigned to investigate crime, or patrol a geographic area and personally handle the full range of requests for police services, and take enforcement action on the full range of law violations for which the reserve's department has enforcement responsibility. . . ."

The courts give great weight to the interpretation of a statute by the administrative agency empowered to promulgate regulations to advance its purposes unless the interpretation is clearly erroneous. (*Norman* v. *Unemployment Ins. Appeals Bd.* (1983) 34 Cal.3d 1, 8.)

While we have found no legislative or administrative enumeration of the "general law enforcement powers" referred to in subdivision (3) of section 832.6(a), they refer to powers which are not routinely required in performing the limited duties which may be assigned level III reserves. This limitation is set in marked contrast to the general

---

[2] The provisions of section H of the POST Administrative Manual have been adopted by reference in section 1007, title 11 of the California Administrative Code.

5

duties of "the prevention and detection of crime and the general enforcement of the laws" which may be assigned to level I and II reserves and which do routinely require the use of general law enforcement powers. Thus, the POST definition of such assignments provides a basis for determining what general law enforcement powers are routinely required in its performance. We believe those powers would include the investigation of crime including the interrogation of suspects and witnesses and search for physical evidence; peace officer arrests, searches and seizures; and the taking and maintaining of custody of persons arrested for or convicted of crime.

The first sentence of subdivision (3) of section 832.6(a) as amended in 1984 contains the same limitation on assignment of level III reserves as the original 1977 version but in more explicit language. The words "not usually require" were replaced by "not requiring . . . in their routine performance." The "authority" as well as the deployment of level III reserves was limited by the 1984 amendment. However, the subject of the limitation was not changed, namely the use of "general law enforcement powers." Thus, the 1984 amendment made little change in the substantive limit the statute places on the unspecified limited duties which may be assigned to level III reserves. The second sentence of the 1984 version of subdivision (3) of section 832.6(a) carried forward the training requirements for level III reserves and added a new supervision requirement. This was the "direct supervision" of the unspecified limited duties to which level III reserves may be assigned under the first sentence of subdivision (1) of section 832.6(a). The nature of such direct supervision will be discussed later.

The third sentence added to subdivision (3) of section 832.6(a) by the 1984 amendment created an exception to the supervision requirement by authorizing specified assignments for level III reserves "without supervision." The words "which do not involve direct law enforcement" in said third sentence are ambiguous. They could refer to those portions of the specified assignments which do not involve direct law enforcement or to a legislative determination that none of the assignments specified involve direct law enforcement. In our view, the context requires the latter meaning.

Responding to the first question, we conclude that a level III reserve peace officer may:

    (a)    be assigned to perform search and rescue, personnel administration support, community public information services, communications technicians services and scientific services without supervision; and

6

(b)  be given other limited duty assignments which do not require general law enforcement powers in their routine performance if the performance of such duties is directly supervised as required.

The request for this opinion asks more specifically whether level III reserves may, without supervision, be assigned to enforce criminal provisions of the Vehicle Code, Penal Code, harbor and boating laws or local ordinances by issuing citations or making arrests.  The answer is no for two reasons.  Since the enforcement duties described are not among those specified in the last sentence of subdivision (3) of section 832.6(a) to which a level III reserve may be assigned without supervision, any such assignment would require direct supervision as provided in the second sentence of the same subdivision.  Further, the enforcement duties described routinely require the making of arrests in their performance and are therefore not a limited duty which may be assigned to a level III reserve under the first sentence of subdivision (3) of section 832.6(a).

The request for this opinion also asks specifically whether level III reserves, when working without direct supervision, may "handle and/or transport" prisoners?  Again, the answer is no for two reasons.  Since such assignments are not among those specified which the statutes state may be performed without supervision, the statute requires direct supervision.  The taking and maintenance of custody of a person arrested or convicted of a crime is a general law enforcement power which is routinely required in the transporting and other "handling" of prisoners.

The request for this opinion also asks specifically whether level III reserve peace officers working without direct supervision have the authority "of arrest, search and seizure."  The only assignments which may lawfully be given a level III reserve which may be performed without direct supervision are those specified in the statute, namely search and rescue, personnel administration support, community public information services, communications technicians services and scientific services which the Legislature has determined do not involve direct law enforcement.  However, when working such specified assignments, a level III reserve peace officer "is a peace officer" (see § 830.6(a)(1)) and "shall have the powers of a peace officer" for the duration of the assignment (see first sentence of § 832.6(a), *supra*) even though they are not routinely required in the performance of such assignments.  Should some unusual circumstances arise in the performance of such assignments which call for the exercise of a peace officer's powers of arrest, search and seizure, the level III reserve peace officer would then have the authority to exercise such powers.

The second question presented asks what degree of supervision is required over a level III reserve peace officer?  First, we must distinguish between those

7

assignments of level III reserves which do require supervision and those which do not. As previously noted, the last sentence of subdivision (3) of section 632.6(a) provides that a level III reserve may perform specified services "without supervision." This contrasts with the "direct supervision" required over other assignments of level III officers in the first and second sentences of that subdivision. Thus, the statute provides no special supervision requirements with respect to search and rescue, personnel administration support, community public information services, communications technicians services and scientific services assigned to level III reserves. This does not mean that level III reserves perform such assignments without any supervision. They are still subject to the orders and directions of their superiors in the chain of command who may provide for such supervision of such assignments as they deem appropriate. However, there is no statutory requirement for a particular kind of supervision of such assignments as there is with others.

With respect to other assignments of level III reserves not specified in the last sentence of subdivision (3) of section 632.6(a), the second sentence of that subdivision requires that such duties may be performed only under the "direct supervision" of a peace officer possessing a basic POST certificate. Neither the Legislature nor POST has defined the term "direct supervision" as used in this statute. The term must be distinguished from the term "immediate supervision" used in subdivision (2) of section 632.6(a) in reference to level II reserves which POST has defined.[3]

In the context of section 832.6(a)(3), it is the limited duties assigned the level III reserve under the first sentence which must be performed under "direct supervision." We believe the Legislature imposed the supervision requirement to provide reasonable assurance that the level III reserve, with his or her limited training, will successfully perform the limited duties assigned. The form this supervision must take depends upon the nature of the limited duties assigned. The law places no limit on the kind of duties which may be assigned requiring only that they be limited, i.e., restricted to a narrow range of activity which is well defined as to what the level III reserve is to do and not do, and that such duties do not require the exercise of general law enforcement powers in their routine performance. Without attempting any exhaustive listing, we think such limited duties would include such assignments as issuing parking tickets, directing

---

[3] POST Administrative Manual section H-1 (revised July 15, 1982) provides:

"2.f. 'Immediate supervision' [in section 832.6(a)] means the reserve officer acts under the direction of a peace officer, possessing a basic certificate, who is routinely in the physical proximity of and available to the reserve officer; however, allowance is permitted for necessary temporary separations. (Applies only to Level II reserve officers.)"

8

traffic, transporting equipment, acting as court bailiff, crowd control and specified surveillance. Circumstances could preclude even such assignments to level III reserves, such as when information indicates that violence may reasonably be expected which would require the exercise of general law enforcement powers. The kind of supervision which would provide reasonable assurance of the successful performance of the limited duty assigned does not necessarily require the close proximity of the supervising officer. If the assigned duty is to remain at a phone booth and phone the supervising officer at headquarters when he sees someone enter or leave a particular building, an occasional phone call to see that the reserve is alert at his post would provide reasonable assurance that the duty will be successfully performed. Reviewing duplicate parking tickets would provide reasonable assurance of the performance of that duty. Spot checks of the courtroom would provide reasonable assurance of the performance of a bailiff's duties. Thus, the nature of the supervision may be as varied as the nature of the duties to be supervised. One generalization may be made as the result of the statutory requirement that the supervision be "direct." The adjective "direct" connotes that the supervision is to be characterized by a close logical, causal and consequential relationship and provided personally without the associative effort of anyone else. (See Webster's Third New International Dictionary.) Thus, the supervising officer may not delegate his supervising responsibilities to others. The greater the risk of harm to the reserve or to others the closer the supervision must be to reasonably assure that performance will be without injury and thus successful. When the risk of harm is great, the supervisor should be in a position to intervene where necessary to prevent the harm. We conclude that the degree of supervision required over a level III reserve peace officer is that required to provide reasonable assurance that the limited duty assigned will be successfully performed without harm to the reserve or others.

The third question is whether a level I reserve peace officer may supervise a level III reserve peace officer? Section 832.6(a)(3) requires that the officer supervising a level III reserve peace officer possess "a basic certificate issued by the commission." POST Administrative Manual section H-1 (revised July 15, 1982) provides "2.g. 'Peace officer possessing a basic certificate' refers to a regular officer or a reserve officer who has been issued a regular POST Basic Certificate." We think the Legislature had this definition in mind when it amended section 832.6 in 1984. Thus, a level I reserve peace officer may act as a supervising officer to a level III reserve if he possesses a regular POST Basic Certificate.

Section 832.6(a)(1) authorizes assignment of level I reserve peace officers if they have completed the requisite training. Possession of a regular POST Basic Certificate is not a requisite to an assignment as a level I reserve peace officer. POST Administrative Manual section H-4 (revised January 1, 1981) provides:

9

"2.b.  Reserve Officer Certificate:  This certificate is issued by POST to reserve officers who meet the requirements for Level I assignment and in addition have completed 200 hours of general law enforcement experience. The certificate is not required by statute nor necessary to exercise peace officer powers as a Level I reserve officer."

The requirements for a regular POST Basic Certificate are even more stringent.  POST Administrative Manual section F-1 (revised January 26, 1984) provides the requirements for a regular POST Basic Certificate.  These include satisfactory completion of the appropriate POST Basic Course Training requirements, meeting the eligibility requirement in section F-1-2 and the application requirements in section F-1-3 and completion of "a period of satisfactory service in the appropriate program . . . of no less than one year, as attested by the department head."

We conclude that a level I reserve peace officer may supervise a level III reserve peace officer only if he or she possesses a regular POST Basic Certificate.

*****

10